Argued and submitted February 25, 1987, reversed and remanded for further proceedings February 24, reconsideration denied June 10, petition for review allowed July 6, 1988 (306 Or 155)

# LLOYD CORPORATION, LTD.,
*Respondent,*

*v.*

# WHIFFEN et al,
*Appellants.*

## (A8512-08127; CA A38839)

750 P2d 1157

Jan Peter Londahl, Portland, argued the cause for appellants. With him on the briefs was Bennett, Birmingham, Londahl & McCandlish, P.C., Portland.

Duane A. Bosworth and Milton C. Lankton, Portland, argued the cause for respondents. On the brief were Duane A. Bosworth and Ragen, Roberts, Tremaine, Krieger, Schmeer, O'Scannlain & Neill, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendants appeal a judgment granting plaintiff declaratory relief and a final injunction which barred defendants from entering plaintiff's shopping center, known as Lloyd Center, "to exercise their expressions of opinion or to gather signatures in the initiative and referendum process without plaintiff's permission or consent." We reverse for further proceedings not inconsistent with this opinion.

These facts are undisputed.[1] The core alone of Lloyd Center, located in Portland, covers more than 18 city blocks without any intervening public streets. Plaintiff leases 115 retail stores and 100 professional and business offices to tenants. It maintains interior walkways and malls and provides off-street parking facilities for more than 1000 vehicles. The interior malls and walkways create a pleasant environment for browsing, congregating, socializing and purchasing merchandise. They contain gardens, art, benches, directories, information booths and other facilities for the convenience of shoppers. Although public sidewalks and streets give access to some of the stores and offices, most of them can only be entered through the interior walkways and malls.

Plaintiff does not permit political activities of any kind on the walkways or malls of Lloyd Center.[2] Plaintiff has placed a notice in the sidewalk at many of the entrances to the Center which states:

"NOTICE—Areas in Lloyd Center Used By The Public Are Not Public Ways But Are For The Use Of Lloyd Center Tenants And The Public Transacting Business With Them. Permission To Use Said Areas May be Revoked At Any Time. Lloyd Corporation, Ltd."

In December, 1985, defendants entered Lloyd Center to gather signatures on three initiative petitions.[3] Plaintiff, however,

---

[1] The parties agreed that the transcript of the preliminary injunction hearing, together with an agreed statement of facts and the pleadings, would be the record on the request for a final injunction. *See* ORCP 79C(2).

[2] While it held this case under advisement, the court required plaintiff to allow initiative signature activity for short periods of time, subject to certain time, place and manner regulations.

[3] The initiative petitions were to (1) prohibit mandatory local measured telephone service; (2) supercede the definition of "radioactive waste" and change the energy facility study payment procedure; and (3) prohibit nuclear power plant operation until a permanent waste site is licensed.

requested that defendants not solicit signatures on its property, but use the adjacent publicly owned sidewalks. Defendants refused, and plaintiff brought this action.

Relying on the Oregon Constitution, defendants assert that the injunction violates their right to solicit signatures in Lloyd Center under the free expression and assembly provisions of Article I, sections 8 and 26,[4] and under the initiative and referendum provisions of Article IV, section 1. They filed a counterclaim in which they asked the court to enjoin plaintiff from attempting to eject them from Lloyd Center and to declare that defendants have a right under the Oregon Constitution to gather initiative petition signatures there. Plaintiff argues that Article 1, sections 8 and 26, proscribe governmental action but do not apply to actions of private property owners. Plaintiff also contends that Article IV, section 1, does not give to defendants any right to gather signatures on private property. It asserts that, under the common law and the Oregon and United States Constitutions, it can exclude defendants from its privately owned shopping center, but it acknowledges that Lloyd Center is an "important resource for initiative and petition gatherers."

■ We first decide whether the court's action in issuing the injunction implicates Article I, section 8. In *Crouch v. Central Labor Council*, 134 Or 612, 293 P 729 (1930), the court interpreted an injunction that the trial court had issued in a labor dispute to bar the Oregon Labor Press from publishing references to the plaintiff. In holding the injunction too broad, the court stated:

"The courts are as much subject to the Constitution of the state as is the legislature of the state. The courts should not

---

[4] Article I, section 8, states:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Article 1, section 26, states:

"No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from instructing their Representatives; nor from applying to the Legislature for redress of greviances [sic]."

Defendants do not argue that their Article I, section 26, rights independently protect their expressional activities at Lloyd Center. Accordingly, we will only discuss Article I, section 8.

make an order in violation of said [A]rticle I, section 8, of the Constitution, though that section itself refers only to a law." 134 Or at 622.

Two recent cases also show that Article I, section 8, limits judicial action when it is necessary to do so to protect the right of expression. Under *Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979), courts may not grant punitive damages in actions for defamation. Under *Hall v. The May Dept. Stores,* 292 Or 131, 637 P2d 126 (1981), a court may not grant punitive damages in an action for infliction of severe emotional distress, if the gravamen of the tortious conduct is speech. In both cases, the Supreme Court reconciled the clauses of Article I, section 8, respecting the right of expression with the clause respecting responsibility for abuse of that right and with Article I, section 10.

In *Wheeler v. Green, supra,* the court stated:

"It is true that Article I, § 8, does not by its terms limit the extent of a defendants' 'responsibility' for defamation to that which is required to satisfy the protection which a plaintiff is guaranteed by Article I, § 10. *In the sensitive area of free expression, however, the threat of large damage recoveries can easily inhibit the exercise of freedom of constitutionally protected expression, as well as its abuse.* This is likely to be particularly true in Oregon where the courts, having no power of remittitur, have little or no control over the amounts which juries award as punitive damages.

"We are convinced by these considerations that a proper application of Article I, § 8, prohibits the award of punitive damages in defamation cases, *unless some other constitutional provision requires that they be allowed.* As we have shown, Article I, section 10, the other provision with a direct application to defamation actions, does not." 286 Or at 118. (Emphasis supplied; footnote omitted.)

In *Hall v. The May Dept. Stores, supra,* the court stated:

"*Wheeler v. Green, supra,* was a defamation case in which a jury had allowed punitive damages. On appeal, this court unanimously held that the Oregon Constitution, which guarantees a remedy for actual injury from defamation, also denies punitive damages for even defamatory expression. The holding rested on a careful accommodation of two sections of the Bill of Rights. Article I, section 8, guarantees 'the free

expression of opinion' and 'the right to speak, write, or print freely on any subject whatever,' subject to responsibility 'for the abuse of this right.' Article I, section 10 guarantees every person 'a remedy in due course of law for injury done him in his person, property or reputation.' *Wheeler v. Green* found the *proper accommodation* in interpreting the responsibility for abuse which section 8 excludes from freedom of speech to be responsibility to an injured party for the 'injury done him in his person, property, or reputation' stated in section 10. It does not extend beyond compensation for the injury to punishment or deterrence." 292 Or at 145. (Emphasis supplied; *footnote omitted.*)

■ Those cases rest on the proposition that, if a court grants a judgment for punitive damages, it might "inhibit the exercise of freedom of constitutionally protected expression, as well as its abuse." *Wheeler v. Green, supra,* 286 Or at 119. Relief was limited to a judgment for compensatory damages only. Similarly, the court's action here in issuing an injunction to enforce plaintiff's property rights could inhibit defendants' rights of expression, which include the opportunity to collect signatures on initiative petitions. Accordingly, the court's action in issuing the injunction does implicate Article I, section 8.[5]

We must, however, find the "proper accommodation," *see Hall v. The May Dept. Stores, supra,* 292 Or at 145, between plaintiff's property rights, protected by the Fifth and Fourteenth Amendments and Article I, sections 10[6] and 18,[7] and defendants' rights of expression under Article I, section 8.

In *Lloyd Corp. v. Tanner,* 407 US 551, 92 S Ct 2219, 33 L Ed 2d 131 (1972), the Supreme Court held that the United States Constitution did not bar the federal court from enjoining Vietnam war protesters from distributing handbills in

---

[5] Because of our disposition, we do not discuss further the effect, if any, of Article IV, section 1.

[6] Article I, section 10, states:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

[7] Article I, section 18, states, in part:

"Private property shall not be taken for public use * * * without just compensation."

Lloyd Center.[8] Subsequently, members of the International Society of Krishna Consciousness brought an action in state court, contending that, under Article I, section 8, they were entitled to speak in "Mall 205," another large shopping center in Portland. *Lenrich Associates v. Heyda,* 264 Or 122, 504 P2d 112 (1972). The Oregon Supreme Court did not reach the state constitutional question, because it believed that *Lloyd Corp. v. Tanner, supra,* was controlling. It reasoned that the United States Supreme Court's interpretation of a shopping center owner's Fifth and Fourteenth Amendment property rights precludes the state from deciding that its free speech provisions prevail over them. 264 Or at 128.

In *Pruneyard Shopping Center v. Robins,* 447 US 74, 100 S Ct 2035, 64 L Ed 2d 741 (1980), however, the United States Supreme Court affirmed a California decision, *Robins v. Pruneyard Shopping Center,* 23 Cal 3d 899, 592 P2d 341, 153 Cal Rptr 854 (1979), which held that, under the Califoria Constitution, the appellees could enter a large shopping center to speak. It ruled that the Fifth and Fourteenth Amendments did not bar California courts from deciding under their own constitution that rights of expression, subject to reasonable time, place and manner regulations, prevail over the right of a large shopping center owner to exclude persons from its property.[9] In this context, the court discussed the nature and extent of the owner's property rights:

> "It is true that one of the essential sticks in the bundle of property rights is the right to exclude others. And here there has literally been a 'taking' of that right to the extent that the

---

[8] In *Lloyd Corp. v. Tanner, supra,* the parties did not raise state constitutional issues.

[9] Other states have concluded, under their own constitutions, that persons have a right to speak in large shopping malls, subject to reasonable time, place and manner regulations. *Batchelder v. Allied Stores International, Inc. et al,* 388 Mass 83, 445 NE 2d 590 (1983); *State v. Schmid,* 84 NJ 535, 423 A2d 615 (1980), *cert dis sub nom Princeton University v. Schmid,* 455 US 100, 102 S Ct 867, 70 L Ed 2d 855, (1982); *Alderwood Assocs. v. Envtl. Council,* 96 Wash 2d 230, 635 P2d 108 (1981). Some states have held that their constitutional provisions on expression restrict governmental action only and, therefore, do not apply to actions of private owners of shopping malls. *Cologne v. West Farms Associates,* 192 Conn 48, 479 A2d 1201 (1984); *Woodland v. Citizens Lobby,* 423 Mich 188, 378 NW2d 337 (1985); *Shad Alliance v. Smith Haven Mall,* 66 NY2d 496, 498 NYS2d 99, 488 NE2d 1211 (1985); *Jacobs v. Major,* 139 Wis2d 492, 407 NW2d 832 (1987).

California Supreme Court has interpreted the State Constitution to entitle its citizens to exercise free expression and petition rights on shopping center property. But it is well established that 'not every destruction or injury to property by government action has been held to be a "taking" in the constitutional sense.' Rather, the determination whether a state law unlawfully infringes a landowner's property in violation of the Taking Clause requires an examination of whether the restriction on private property 'forc[es] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' *This examination entails inquiry into such factors as the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations.* When 'regulation goes too far it will be recognized as a taking.'

"Here the requirement that appellants permit appellees to exercise state-protected rights of free expression and petition on shopping center property clearly does not amount to an unconstitutional infringement of appellants' property rights under the Taking Clause. There is nothing to suggest that preventing appellants from prohibiting this sort of activity will unreasonably impair the value or use of the property as a shopping center. The PruneYard is a large commerical complex that covers several city blocks, contains numerous separate business establishments, and is open to the public at large. *The decision of the California Supreme Court makes it clear that the PruneYard may restrict expressive activity by adopting time, place, and manner regulations that will minimize any interference with its commercial functions.* Appellees were orderly, and they limited their activity to the common areas of the shopping center. In these circumstances, the fact that they may have 'physically invaded' appellants' property cannot be viewed as determinative." 447 US at 82. (Emphasis supplied; footnotes and citations omitted.)

Justice Powell, in a concurring opinion, emphasized the limits of the decision:

"Nor does our decision today apply to all 'shopping centers.' This generic term may include retail establishments that vary widely in size, location, and other relevant characteristics. Even large establishments may be able to show that the number or type of persons wishing to speak on their premises would create a substantial annoyance to customers that could be eliminated only by elaborate, expensive, and possibly unenforceable time, place, and manner restrictions. As the Court observes, state power to regulate private property is

limited to the adoption of reasonable restrictions that 'do not amount to a taking without just compensation or contravene any other federal constitutional provision.' " 447 US at 96.[10]

■    Like the shopping center in *Pruneyard,* Lloyd Center is large, covers numerous city blocks, contains many separate business and professional establishments and is open to the public. Plaintiff seeks to draw masses of people to it each day, provides large parking areas and seeks to create an environment conducive to shopping. It has provided interior public walkways and malls, with benches, flower gardens and music designed to encourage the public to windowshop, meet friends, congregate and pass the time. Plaintiff's invitation to the public is broad and for more than just commerical activity. Furthermore, there is no evidence that, if defendants were to exercise their expression rights on plaintiff's property, subject to reasonable time, place and manner regulations, it would substantially interfere with plaintiff's commercial activity, have a serious economic impact on Lloyd Center or interfere with plaintiff's "reasonable investment backed expectations." *Pruneyard Shopping Center v. Robins, supra,* 447 US at 83.

Moreover, the character of the governmental action which we consider here—a limited injunction—could protect the compelling interest that the public has that free expression, including that involved in collecting signatures on initiative petitions, be effective and available. Large regional shopping malls, because of their character as places where members of the public congregate and their increasing role in communities across the state, are important locations for communicative activity. A limited injunction that subjects defendants' exercise of rights in Lloyd Center to reasonable

----

[10] In *Robins v. Pruneyard Shopping Center, supra,* the California Supreme Court quoted from the dissent of Mosk, J., in *Diamond v. Bland,* 11 Cal 3d 331, 345, 113 Cal Rptr 468, 521 P2d 460:

" 'It bears repeated emphasis that we do not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a modest retail establishment. As a result of advertising and the lure of a congenial environment, 25,000 persons are induced to congregate daily to take advantage of the numerous amenities offered by the [shopping center there]. A handful of additional orderly persons soliciting signatures and distributing handbills in connection therewith, under reasonable regulations adopted by defendant to assure that these activities do not intererere with normal business operations would not markedly dilute defendant's property rights.' " 23 Cal 3d at 910. (Citations omitted).

time, place and manner regulations also would minimize interference with its commercial functions. The interference with plaintiff's property would be insubstantial and would not constitute a taking under the Fifth and Fourteenth Amendments.

Furthermore, if an injunction were to allow defendants' expression rights in Lloyd Center, subject to reasonable time, place and manner regulations, it would not either preclude all economically feasible uses of Lloyd Center or inflict irreversible damage on plaintiff. *See Suess Builders v. City of Beaverton,* 294 Or 254, 258, 656 P2d 306 (1982); *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 614, 581 P2d 50 (1978); *see also Thornburg v. Port of Portland,* 233 Or 178, 190, 376 P2d 100 (1962). We conclude that an injunction that assures defendants that they may exercise their expression rights in Lloyd Center, subject to reasonable time, place and manner regulations would not constitute a taking of plaintiff's property under Article I, section 18.

We must also find the "proper accommodation" between the remedy "by due course of law for an injury done [plaintiff] in [its] * * * property," Article I, section 10, and defendants' rights of expression. Plaintiff asserts that it is entitled to a court remedy to exclude defendants. If defendants' exercise of expressive rights are subject to reasonable time, place and manner regulations, there is no interference with plaintiff's property rights that would be substantial and no "injury" to its property within the meaning of Article I, section 10. *See Batchelder v. Allied Stores International, Inc.,* 388 Mass 83, 445 NE2d 590, 595 (1983); *Alderwood Assocs. v. Envtl. Council,* 96 Wash 2d 230, 635 P2d 108, 116 (1981).

■■ The court stated in *State v. Henry,* 302 Or 510, 732 P2d 9 (1987), that Article I, section 8, does not rule out "reasonable time, place and manner regulations of the nuisance aspect" of certain types of expression. Although an injunction here would be directed at speech, *see State v. Henry, supra; State v. Moyle,* 299 Or 691, 705 P2d 740 (1985); *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982), we conclude that Article I, section 8, does not bar the court from issuing an injunction that places reasonable time, place and manner regulations on defendants' exercise of their rights of expression on plaintiff's property. Accordingly, as in *Wheeler*

*v. Green, supra,* and *Hall v. The May Dept. Stores, supra,* where the court confined the remedy to compensatory damages for "injury done [to the plaintiffs] in * * * reputation," the remedial injunctive power of the court should be confined to reasonable time, place and manner regulations to accommodate defendants' rights of expression under Article I, section 8. The trial court should, after appropriate hearing, fashion a judgment which implements these principles.[11]

Reversed and remanded for further proceedings not inconsistent with this opinion.

---

[11] Plaintiff argues that the court cannot compel it to allow use of its property as a forum for expression of others, because that would violate its rights under the First Amendment and Article I, section 8. In *Pruneyard Shopping Center v. Robins, supra,* the Supreme Court disposed of a similar First Amendment claim:

"[T]he shopping center by choice of its owner is not limited to the personal use of appellants. It is instead a business establishment that is open to the public to come and go as they please. The views expressed by members of the public in passing out pamphlets or seeking signatures for a petition thus will not likely be identified with those of the owner. Second, no specific message is dictated by the State to be displayed on appellants' property. There consequently is no danger of governmental discrimination for or against a particular message. Finally, as far as appears here appellants can expressly disavow any connection with the message by simply posting signs in the area where the speakers or handbillers stand. Such signs, for example, could disclaim any sponsorship of the message and could explain that the persons are communicating their own messages by virtue of state law." 447 US at 87.

Plaintiff does not claim that a different analysis applies under Article I, section 8. Plaintiff's argument is without merit.