STUART *v.* CITY OF ATLANTA *et al.*

No. 8504.   MARCH 5, 1932.

*George & John L. Westmoreland,* for plaintiff.

*J. L. Mayson, C. S. Winn,* and *J. C. Savage,* for defendants.

PER CURIAM.   The Atlanta Gas-Light Company made application to the Public-Service Commission of Georgia to fix rates to be charged to consumers of gas within the City of Atlanta.   While the application was pending, the City of Atlanta being a user and consumer of gas, a resolution was passed by the general council contributing $1,500 to the Municipal Utilities Rate Association of Georgia, of which association the City of Atlanta was a member, to be used by that association in the employment of experts on gas rates for the purpose of appearing before the Public-Service Commission to contest the application.   R. F. Stuart, as a citizen and taxpayer, filed his petition seeking an injunction to prevent the city from paying the amount of the proposed donation, on the ground that the municipality had no authority to devote municipal funds for such purpose, and that the municipal action in question was ultra vires.   The defendant filed its answer; and when the case came on for hearing, and after evidence had been introduced, the court refused an interlocutory injunction.   The plaintiff excepted. This case is controlled by the decision of this court in *Barrett* v. *Atlanta,* 145 *Ga.* 678 (89 S. E. 781), there being no provision in the charter of the City of Atlanta, or any law, authorizing it to make such expenditure.

*Judgment reversed.   All the Justices concur, except Beck, P. J., and Atkinson, J., who dissent.*

BECK, P. J., dissenting.   I am of the opinion that the court properly refused an injunction.   The city had the right, both on its own behalf and the interest of citizens and taxpayers who are consumers of gas, to appear before the Public-Service Commission of the State.   Of course it is not assumed that the gas-light com-

pany was attempting or would attempt to have unreasonable rates charged to the consumers of gas, or to have rates fixed at a higher rate than they should be under all the circumstances. Nevertheless the city, which is itself a large consumer of gas, in its own interest and the interest of the citizens within the municipality should appear at the hearing and bring before the Public-Service Commission all the facts ascertainable, to throw light upon the subject of what is the proper rate to be charged by the company. It is not unfair to assume that the gas-light company would have all the facts ascertainable in the usual way—in the proper way, no doubt—for consideration by the Public-Service Commission; and it would also be right and proper for the city to produce facts ascertainable by its legal department and such experts as might be required for consideration by the commission in passing upon the facts and the issues in the case.

In his work on Public Utility Rate Making, pages 30-35, Groninger says: "In a rate case, in which a municipality and its inhabitants are directly interested, the responsibility of protecting not only its own rights but the rights of its inhabitants rests upon the municipality. 'A municipality is a corporation, the inhabitants are the corporators, its officers, its public agents.' A municipality is clothed with a proprietary or business power to care for its own affairs, and with a governmental or legislative power to care for the rights and welfare of its inhabitants. In recognition of both these powers, regulatory laws consider the municipality a proper party in a rate case before the commission; and courts consider it a proper party before the court in the review of rate orders. . . It is the municipality's legal right, and with such right a coexistent duty, to protect itself and its inhabitants against abuse of the public-service corporation's powers in furnishing utility service. And it is the municipality's responsibility to exercise the right and perform the duty." The municipality has, of course, its law department and an attorney, provided for in the charter of the city; but the same author above quoted says, in regard to municipalities: "True, they have departments of law. But the law departments are not equipped with the means of legal warfare. . . It is only through appraisal engineers and accountants that the evidence so necessary in every rate case may be had. . . The officers of municipalities must appreciate their responsibility

in this matter. They should prepare themselves to take care of their own and the public's interests. They should know the law applicable to rate-making; they should have, available, engineering and accounting assistance and consultant advice; so that when rate cases arise before commissions, they may be able to assist commissions in making thorough, complete, and honest investigations and in procuring competent evidence for hearings, and for court review, if necessary, to the end that rates be authorized which are fair both to the utility and the users of the service. The municipality's responsibility of exercising its legal right of participating in rate-making cases, where it and its inhabitants are affected by the rates, is commensurate with the importance of both the value of the services and the costs of the services to the users." It seems to me that what is said by this author is sound. I agree with the contention of counsel for the defendants that the municipality would be a proper party, not only on the hearing before the commission, but on the subsequent litigation, if any arise thereon, in the court.

Of course I recognize as true, as contended by counsel for the plaintiff, that "a municipal corporation has no authority to contract or incur any liability that is not authorized by its charter or some general law of the State, and that a contract beyond the scope of its powers is ultra vires and void." *Barrett* v. *Atlanta*, 145 *Ga.* 678 (supra). While no part of the charter of the City of Atlanta is pointed out which gives in express words the power to employ an expert, or to aid in employing an expert for the purposes indicated in this suit, nevertheless I think that power arises by necessary implication. Under the charter, the mayor and general council have authority to pass by-laws and ordinances respecting public buildings, grounds, public houses, etc., etc., and also to pass resolutions and ordinances "that may seem to them proper for the security of the peace, health, order, and good government of the city." It is true that the section from which this quotation is taken relates to the police power of the city; but this should be considered in connection with the express power given to the city to elect a city attorney. And it is to be assumed that, with the population which Atlanta has, assistance will be necessary to make efficient its legal department. The city attorney, or some of his assistants, must appear in court to represent the city in cases in

which it is interested. This city attorney can not be expected, in a city of over a quarter of a million population, to investigate all the facts which it may be necessary for him to rely upon in the prosecution of a suit by the city, or in defense of the city where it is the defendant in the case; and it will be necessary for him, upon many matters, to have the assistance of an expert accountant or an expert investigator of facts, so that these facts may be collected, arranged, and reduced to a compass that will enable the city attorney to handle them, study them, and submit them to a court. And I think it is within the power and authority of the city to employ assistants for the city attorney, and in this may be included experts to investigate rates of gas-light companies and other public utilities.

ATKINSON, J., concurs in the foregoing dissent. The case differs from *Barrell* v. *Atlanta* (supra), which did not involve the city's authority to expend public funds for protection of the pecuniary interests of the city which were directly involved, or the pecuniary interests of the general public that were directly involved, but concerned only the authority of the city to expend public funds to pay a reward for apprehension of an offender against the laws of the State for a crime committed upon an inhabitant of the city.