QUESTIONS:
1. Does Ch. 71-803, Laws of Florida, as amended by Ch. 72-625, Laws of Florida, authorize the Orange County Civic Facilities Authority to expend funds for a lobbyist for aiding in the passage of a `resort tax' even if said funds were directly or indirectly obtained from the Board of County Commissioners of Orange County for that purpose?
2. Despite the provisions of Ch. 71-803, Laws of Florida, as amended by Ch. 72-625, Laws of Florida, does s. 11.062, F. S. 1975, prohibit the appropriation of public money by the Board of County Commissioners of Orange County to another public agency that uses the funds for the purpose of utilizing the services of a lobbyist?
3. May the Orange County Civic Facilities Authority and the Board of County Commissioners of Orange County use public money to pay for the services of a lobbyist which were rendered prior to formal authorization and official action concerning the rendering of those services?
SUMMARY:
Chapter 71-803, Laws of Florida, as amended by Ch. 72-625, Laws of Florida, does not authorize the Board of County Commissioners of Orange County to appropriate public funds for use by the Orange County Civic Facilities Authority for purposes of retaining a lobbyist in order to promote the passage of `resort tax' legislation during the 1977 Legislative Session.
AS TO QUESTION 1:
According to your letter, the Orange County Civic Facilities Authority has requested that the Board of County Commissioners of Orange County provide a sum of up to $10,000 to the authority which the authority would then use to employ a lobbyist in order to aid in gaining the passage of a `resort tax' at the 1977 Session of the Legislature.
The Civic Facilities Authority was created by Ch. 71-803, Laws of Florida, and amended at Ch. 72-625, Laws of Florida, for the purposes of
 . . . planning, developing, constructing, acquiring, owning, reconstructing, extending, enlarging, repairing, improving, relocating, equipping, maintaining and operating facilities for the holding of conventions and expositions and civic, cultural, recreational, athletic and similar events and activities. . . . Said purpose is hereby deemed to be a public purpose the fulfillment of which is an urgent public necessity. [Section 1, Ch. 71-803, supra.]
However, s. 9, Ch. 71-803, supra, states that Orange County may appropriate funds for use by the authority `. . . for maintenance of the facilities and for the payment of employees' salaries, operating, and planning expenses and other necessary expenditures. . . .' Thus, moneys received by the authority from a county appropriation are limited in their use to those enumerated at s. 9. While the phrase `other necessary expenditures' has not been defined within Ch. 71-803, the rule of statutory construction known as ejudem generis can be applied to s. 9 in order to ascertain what the Legislature intended for such phrase to include. When general words such as `other necessary expenditures' follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus. Van Pelt v. Hilliard, 78 So. 693, 697
(Fla. 1918). In this context, the general words are to be construed as permitting only expenditures which could unquestionably be characterized as being essential to the operation of the agency. It does not appear that an expenditure of county funds for purposes of hiring a lobbyist to promote a `resort tax' would be such an essential expense.
Moreover, the only purposes for which the county may lawfully appropriate county funds for the benefit of the authority are found within Ch. 71-803, supra. When s. 9 is read in conjunction with the remainder of the act, the express purposes for which expenditures may lawfully be made include those found at s. 1 relating to the general purposes of the authority; s. 3(6), as amended by s. 3, Ch. 72-625, defining facilities for purposes of the act; s. 4(4) relating to the purchasing, leasing, and acquiring of land facilities as well as contracts for operating, improving, extending, enlarging, repairing, and equipping authority facilities; s. 4(13), authorizing advertisements and promotion of facilities and activities of the authority; s. 4(16) empowering the authority to do all acts necessary, desirable, or convenient to carry out the purposes expressly granted in Ch.71-803; and s. 5(6) authorizing revenues not pledged to revenue bonds or otherwise committed to be used to finance or pay for facilities and the authority or the operation thereof and otherwise in carrying out the purpose and provisions of Ch.71-803. By applying the rule of expressio unius est exclusioalterius, which states that where a statute enumerates things on which it is to operate, it is ordinarily to be construed as excluding from its operation all those not expressly mentioned, to Ch. 71-803, it is clear that by operation of this rule the expenditure is not proper since `lobbying' is not one of the authority purposes specifically enumerated at Ch. 71-803. See
Thayer v. State, 335 So.2d 815 (Fla. 1976); Interlachen Lakes Estates Inc. v. Snyder, 304 So.2d 433 (Fla. 1974); Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952).
In AGO 075-120 this office concluded that neither the Division of Tourism nor the Division of Economic Development was authorized to make expenditures from `paid advertising and promotion' appropriations to purchase transportation, meals, accommodations, and other similar items for potential investors, tourism officials, and the like or to sponsor special meetings and events by financially contributing to the expenses of such events. While AGO 075-120 noted that judicial precedent raises doubts as to whether or not the Legislature could legally authorize such expenditures, specific express legislation would be necessary before the Legislature could be said to have authorized such expenditure. In reaching this conclusion, this office cited a long line of Florida cases including State v. Jacksonville Terminal Co., 71 So. 474 (Fla. 1916), wherein it was stated:
 A presumption in favor of action taken under an asserted delegated statutory power can arise only when some substantial basis of authority for the exercise of the power appears in a statute. Doubts cannot be resolved in favor of a statutory power when there is no enactment which can be a basis for such asserted delegated power.
Accord: Attorney General Opinion 068-12, stating that expenditures of district funds by the Central and Southern Florida Flood Control District and the Sourthwest Florida Water Management District for entertainment purposes are not permitted in the absence of specific legislative provisions authorizing such expenditures; AGO 071-28, discussing the need for specific legislative authorization in order to expend funds from the Governor's contingent-discretionary appropriation; and AGO's 072-320 and 065-106, holding that a school board may not expend public funds in order to obtain favorable support from the electorate or to `propagandize' the actions of the board.
The rules discussed in the aforecited Attorney General Opinions and cases cited therein involving the expenditure of public funds by state and district agencies and school boards are equally applicable to expenditures by the various counties. See White v. Crandon, 156 So. 303 (Fla. 1934); Gessner v. Del-Air Corporation,17 So.2d 522 (Fla. 1944); Crandon v. Hazlett, 26 So.2d 638 (Fla. 1946).
This conclusion, that pursuant to Florida law public funds may not be expended by a county or district or other statutory entity for lobbying purposes unless expressly and specifically authorized by statute, is also consistent with the weight of authority throughout the country. Compare, Stanson v. Mott, 551 P.2d 1
(Calif. 1976) (en banc); Porter v. Tiffany, 502 P.2d 1385 (Ore. 1972); Stein v. Kramarsky, 375 N.Y.S.2d 235 (Sup.Ct. 1975); City of Phoenix v. Michael, 148 P.2d 353 (Ariz. 1974); City of Cleveland v. Artl, 23 N.E.2d 525 (Ct.App. Ohio 1939); Stuart v. City of Atlanta, 163 S.E. 493 (Ga. 1932); Durgin v. Brown,180 A.2d 136 (N.J. 1962); Citizens to Protect Public Funds v. Board of Education, 98 A.2d 673 (N.J. 1953); and Shannon v. City of Huron,69 N.W. 598 (S.D. 1896), with Hays v. City of Kalamazoo,25 N.W.2d 787 (Mich. 1947), and cases cited therein; Fitts v. Com'n of the City of Birmingham, 141 So. 345 (Ala. 1932).
In the leading case of Citizens to Protect Public Funds, supra, Justice (now United States Supreme Court Justice) Brennan, writing for the New Jersey Supreme Court, considered the legality of a school board's expenditure of public funds for the publication of an 18-page booklet concerning a school building program which was the subject of an upcoming bond election. Most of the booklet contained factual information as to the need for the proposed school facilities and the cost of the proposed project, but three of the booklet's pages contained the simple exhortation `Vote Yes' `Vote Yes' and an additional page warned of the dire consequences that would result `if You Don't Vote Yes.'
Focusing on these latter portions of the booklet, the New Jersey court declared that in publishing such material
 the board made use of public funds to advocate one side only of the controversial question without affording the dissenters the opportunity by means of that financed medium to present their side, and this imperiled the propriety of the entire expenditure. The public funds entrusted to the board belong equally to the proponents and opponents of the proposition, and the use of the funds to finance not the presentation of facts merely but also arguments to persuade the voters that only one side has merit, gives the dissenters just cause for complaint. The expenditure then is not within the implied power and is not lawful in the absence of express authority from the Legislature. [98 A.2d at p. 677.]
See Stanson v. Mott, supra, at 8.
Also compare s. 11.062, F. S., which sets forth a general state policy of prohibiting the use of state funds for lobbying purposes.
Since the authority possesses no specific legislative authority to expend public funds for purposes of lobbying for `resort tax' legislation, your first question is answered in the negative. Because the answer to the first question is in the negative, it appears the remaining questions posed by your inquiry are moot.
Prepared by: Sharyn L. Smith Assistant Attorney General