Argued March 29, re-argued August 24, reversed and remanded
November 17, petition for rehearing denied December 20,
1972, petition for review denied February 21, 1973

PORTER, *Appellant, v.* TIFFANY ET AL
(No. 101273), *Respondents.*

502 P2d 1385

*Charles O. Porter,* Eugene, *in propria persona,* argued the cause and filed the briefs for appellant.

*Windsor Calkins,* Eugene, argued the cause for respondents. With him on the brief were Calkins & Calkins, Eugene.

Before LANGTRY, Presiding Judge, and FOLEY and FORT, Judges.

FOLEY, J.

Plaintiff brought this action as a taxpayer under ORS 294.100[1] to require the five commissioners of the Eugene Water and Electric Board (EWEB), a municipally owned utility, to personally reimburse EWEB for expenditures of $6,710.38 in 1968 and $6,608.13 in 1970. These funds were expended by the defendants in connection with two election measures. The 1968 measure involved authorizing the issuance and sale of $225 million in bonds to allow EWEB to participate in a nuclear power program. The television and radio

---

[1] ORS 294.100 (2) provides as follows:

"Any public official who expends any public money in excess of the amounts, or for any other or different purpose or purposes than authorized by law, shall be civilly liable for the return of the money by suit of the district attorney of the district where the offense is committed, or at the suit of any taxpayer of such district."

time, newspaper advertising, voter surveys and other materials purchased by EWEB with the disputed funds strongly advocated a favorable vote on the referendum. The 1970 election involved an initiative measure to delay the construction of a nuclear power plant for four years. In the latter instance EWEB's expenditures were for similar materials advocating the defeat of the initiative measure.

After hearing testimony and arguments of counsel, the trial court rendered judgment in favor of defendants. The court made a general finding in favor of defendants. However, oral findings made by the court from the bench show that the decision rested on a finding that the board members' actions were not arbitrary and capricious. The trial court concluded that the board members had acted in good faith and on the advice of counsel, and that they had made an effort to ascertain other points of view before advocating their position. Finally, the court indicated its feeling that this sort of matter is a political question, and that voters might avail themselves of recall procedures if they did not approve of the officials' actions.

We are persuaded that the trial court's decision was erroneous.

■ ORS 294.100 (2) provides that "[a]ny public official who expends any public money in excess of the amounts, or for any other or different purpose or purposes than authorized by law * * *" shall be civilly liable in a suit such as that involved in this case. The trial court concluded that the funds involved in this situation were "public money" within the meaning of the statute; this conclusion is supported by the weight of authority. 63 Am Jur2d 394, Public Funds § 1; 50 CJ 854, Public § 40; *City of Bessemer v. Personnel*

*Board,* 240 Ala 411, 199 So 815 (1941). As the California Supreme Court stated in *Mines v. Del Valle,* 201 Cal 273, 279-80, 257 P 530 (1927):

> "If money belonging to the city is illegally paid out by its officers, the inevitable result would be a detriment to the taxpayers of said city * * * The fact that the funds unlawfully withdrawn from the public treasury were not raised by direct taxation, but represented receipts from a public utility operated by the city, would not change this result. * * *"

*See also Trickey v. City of Long Beach,* 101 Cal App 2d 871, 226 P2d 694 (1951).

The question remaining to be answered is whether the expenditures made by defendants herein were "authorized by law."

The purposes for which EWEB's earnings may be expended are circumscribed by ORS 225.250, 225.270, and the provisions of the charter of the city of Eugene. ORS 225.250 provides as follows:

> "The earnings of the electric plant or distributing system shall be applied and used in payment of warrants and interest thereon issued in connection with operation of any such plant or system, and also in payment for alterations, improvements, additions or extensions and for redemption and retirement of outstanding bonds, together with interest thereon, and shall be expended only in connection with and for improving such plant or system and not for other municipal purposes, except as otherwise provided in ORS 225.270."

ORS 225.270 provides:

> "When any city which owns or operates a municipal electric power plant or system or distributing system, has paid principal and interest to

date on all indebtedness incurred in connection therewith, and has created and accumulated an adequate depreciation and replacement reserve in the judgment of the officer having control of such plant or system, the city shall, for the purpose of reducing general property taxes within such city, pay to itself not less than three percent of the annual gross operating revenue of such plant or system."

Section 213 of Part X of Acts Supplemental to the Charter of the City of Eugene, Oregon, sets out the powers of EWEB:

"Section 1. The City of Eugene, Lane County, Oregon, acting by and through the Eugene Water & Electric Board, is hereby authorized and empowered to *improve, extend, enlarge* and *acquire* water and electrical utilities' systems within and without the City by the purchase, acquisition, construction and installation of such systems, units, equipment, transmission facilities and structures as shall in the judgment of said Eugene Water & Electric Board be deemed expedient, convenient and necessary; to acquire by purchase, condemnation or otherwise, within and without the said City, systems, real estate, rights of way, property, water rights, easements and licenses necessary or convenient to said improvement extension and acquisition, and to purchase construct and install any and every unit, equipment, structure, appliance and system reasonable and necessary therefor." (Emphasis supplied.)

Section 4 of Section 213 refers to the purposes for which EWEB may expend its net revenues:

"Section 4. As additional security for the payment of the bonds hereby authorized, the Eugene Water & Electric Board is authorized and directed to pledge all or any part of the net revenues of the Eugene Water & Electric Board arising from the operation of the said City's electrical and water utilities remaining after deducting the expenses of

maintenance and operation, and provision for re-
tirement of present bonded indebtedness of said
utilities, or either of them, required for the pay-
ment of principal and interest of the bonds herein
authorized, and for the creation and maintenance of
reserves and sinking funds deemed advisable by the
Eugene Water & Electric Board for such purpose,
notwithstanding any other present provisions of the
Charter of said City. The Eugene Water & Elec-
tric Board is directed to establish and maintain
from time to time such rates and charges for water
and electrical services as will produce sufficient
funds to pay the principal and interest of the bonds
sold as aforesaid, together with other obligated
charges."

It is evident that the expenditures made by the
defendants were not expressly authorized by either
statute or charter. We now turn our attention to
whether the expenditures were impliedly authorized as
necessarily incident to the expressly granted powers.

Oregon courts have not ruled on this question.
However, other courts have decided similar cases, and
almost all have come to the conclusion that campaign
expenditures such as were made in the instant case are
not impliedly authorized and are improper. *Mines v.
Del Valle,* 201 Cal 273, 257 P 530 (1927); *Elsenau v.
City of Chicago,* 334 Ill 78, 165 NE 129 (1929); *State
ex rel Port of Seattle v. Sup'r Ct.,* 93 Wash 267, 160
P 755 (1916); *Shannon et al v. City of Huron,* 9 SD
356, 69 NW 598 (1896).

*Mines v. Del Valle,* supra, was very similar to
the instant case. In that case, as here, a bond issue
had been proposed and the Los Angeles Board of Pub-
lic Service Commissioners authorized the expenditure
of public utility revenues to finance a campaign in
favor of the proposed bond issue. A taxpayer sued the

commissioners under the California equivalent of ORS 294.100 to require the commissioners to reimburse the city. The commissioners urged that the authority granted them by the Los Angeles charter to use money in the power revenue fund for the purpose of "conducting, operating, maintaining and extending the business of said department pertaining to electric power" included the authority to do all things necessary to execute that power. Since the bond issue was necessary to extend the business of the utility, the commissioners argued, it was necessary to advertise to insure the success of the bond issue. In rejecting that argument, the court stated:

"* * * The vice of this argument is in assuming that the raising of the necessary funds is any part of the power to extend said electrical system. We may all concede that the system cannot be extended without funds with which to carry on such extension. But the raising of the money to extend said system is one thing and the extension of it is an entirely different and distinct power. The provisions of the charter giving to the board of public service commissioners power to extend the electrical plants and works of said city and to expend the funds in the power fund for the purpose extending said public utility in our opinion refer simply to the physical management of the same and cannot be enlarged to include another and distinct power, that of raising money either directly or indirectly for the purpose of conducting and operating said utility, or for the purpose of. extending the business thereof." *Mines v. Del Valle,* supra, 201 Cal at 282-83.

In addition, the *Mines* court pointed out that since voter sentiment regarding the proposed bond issue was divided, and since the electors opposing the issue had an equal right to and interest in the funds

as did those who advocated the issue, using the funds to advocate approval was "manifestly unfair and unjust." *Mines v. Del Valle,* supra, 201 Cal at 287.

■ Turning to the expenditures in the instant case, we conclude that they were not impliedly authorized as incident to the powers granted EWEB in the charter of the city of Eugene. We believe that the express power granted EWEB to "improve, extend, enlarge, and acquire water and electrical utilities' systems * * *" refers to the physical management of the utilities. The function of raising money through bond issues to finance proposed extensions is an entirely different power which has been specifically given to the common council of the city of Eugene. *See* Section 2 of Section 213, Part X of Acts Supplemental to the Charter of the City of Eugene, Oregon. EWEB has no part in this latter function, and thus cannot rely on it as authorizing the contested expenditures.

Having determined that the expenditures made by defendants were not "authorized by law," we consider whether defendants' assertions of good faith and reliance upon the advice of counsel are sufficient defenses to bar recovery. The court in *Mines v. Del Valle,* supra, 201 Cal at 289, held that despite the fact that there was no doubt that the defendants therein had acted in good faith, nothing could "* * * justify the attempted exercise by an official of any power or authority not expressly or impliedly given to him, no matter how honest may be his intention or how upright his motives." *See also* 63 Am Jur2d 821, Public Officers and Employees § 322, where it is stated:

> "Public officers who have charge of public funds and public money are charged with the duty, as trustees, to disburse and expend the money for

the purposes and in the manner prescribed by law. They are liable if they divert the trust funds from the governmental purposes for which they were collected. Mere good faith in making an improper payment of public funds is not recognized as any excuse whatever. * * *"

■ The trial court found that defendants had relied upon the advice of counsel. That finding is not supported by the record. Defendants offered no testimony or exhibits which tend to show either reliance upon the advice of counsel, or the nature of that advice. Inferences can be drawn from certain of plaintiff's exhibits and from some responses to plaintiff's questions that defendants' counsel had advised them; it can further be inferred that counsel's advice was that the board could not advocate only one side of the proposals to be voted on, but instead was required to fairly set out the advantages and disadvantages of the proposals. See *Citizens, &c., Public Funds v. Bd. Ed., Parsippany-Troy Hills,* 13 NJ 172, 98 A2d 673 (1953). Even if we assume that this was the advice of counsel, it is clear from the exhibits and the testimony that such advice was not followed. The disputed expenditures in this case were not made for materials which would provide a neutral picture of the merits and demerits of the proposals. Instead, almost exclusively they presented only arguments favorable to the board's position. In order to rely on advice of counsel as a defense such advice obviously must be followed. In this case the defendants fell short of establishing such defense and thus we do not reach the question of whether advice of counsel would be a defense.[2]

---

[2] The trial court's conclusion that reliance on counsel was a defense in this case was based on State ex rel. v. Mott, 163 Or 631, 97 P2d 950 (1940). That case involved the reliance of state of-

The sole remaining question is the amount of defendants' liability. The trial court found that EWEB had been reimbursed for one-half of the expenditures made in the 1970 campaign, but that it had not been reimbursed for its expenditures in the 1968 campaign. Plaintiff has not contested on appeal the trial court's finding as to the 1970 reimbursement, and we believe that the facts brought out at trial support the trial court's finding of no reimbursement of the 1968 expenditures.

Reversed and remanded for an entry of a judgment in accordance with this opinion.

---

ficials upon the advice of the attorney general. In view of our conclusion that defendants failed to establish the defense of advice of counsel, it is not necessary for us to decide whether the *Mott* holding would have any application to reliance on the advice of private counsel.