Argued and submitted April 10, affirmed May 26,
reconsideration allowed, former opinion adhered to
(53 Or App 528, 632 P2d 502) August 17, 1981

## NICOLL,
*Appellant,*

*v.*

## CITY OF EUGENE,
*Respondent.*

(No. 16-80-08132, CA 19745)

628 P2d 1213

John E. Jaqua, Eugene, argued the cause for appellant. With him on the briefs was Jaqua & Wheatley, P.C., Eugene.

Windsor Calkins, Eugene, argued the cause for respondent. With him on the brief was Calkins & Calkins, Eugene.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

**RICHARDSON, P. J.**

Plaintiff appeals from a judgment for the defendant, City of Eugene, acting through its agency, the Eugene Water & Electric Board (EWEB), in this ORS chapter 27 proceeding. Plaintiff is a customer of EWEB and contends that EWEB's residential energy conservation plan (plan), which was adopted pursuant to the National Energy Conservation Policy Act (42 USCA § 8201 *et seq.*), violates various provisions of the Oregon Constitution and was adopted without charter or statutory authority. We affirm.

The parties' statement of the controversy recites, in relevant part:

"VII.

"Pursuant to the EWEB Plan, EWEB is authorized to engage in the following activities.

"(A)   Provide matching grants of funds to EWEB customers to be used to purchase approved energy conservation and renewable resource measures and equipment to be installed by EWEB customers;

"(B)   Lend funds at zero percent interest to EWEB customers with electric space heating to be used to purchase and install approved energy conservation and renewable resource measures and equipment;

"(C)   Lend funds at an interest rate and financing charge equal to the financing and handling cost incurred by EWEB to customers without electric space heating, such funds to be used to purchase and install approved energy conservation and renewable resource measures and equipment;

"(D)   Arrange financing by lenders for EWEB customers to purchase and install approved energy conservation and renewable resource measures and equipment;

"(E)   provide for repayment of approved loans made by lenders to EWEB customers for the purchase and installation of approved energy conservation and renewable resource measures and equipment through EWEB billings; and

"The activities described in paragraphs VII(A), (B), and (C) are collectively referred to as the 'EWEB Financing Program.'

"VIII.

"To participate in the EWEB Financing Program, an EWEB customer must be an 'eligible customer' as defined in the EWEB Plan. The plaintiff is an eligible customer.

The plaintiff has purchased and installed energy conservation and renewable resource measures and equipment prior to May 27, 1980 on his residential buildings.

"\* \* \* \* \*

"X.

"The EWEB Financing Program is effective as of May 27, 1980, the date on which the resolution adopting the EWEB Plan was passed by the EWEB Board of Commissioners.

"XI.

"As an adjunct to the EWEB Plan, the EWEB Board of Commissioners approved, on May 27, 1980, a Temporary Program to provide, without direct cost to EWEB customers, certain approved energy conservation and renewable resource measures and equipment. \* \* \*

"XII.

"The EWEB Financing Program and Temporary Program will be funded by revenues received from operations or by bonds payable from revenues received from operations.

"In order to use bond funds EWEB must submit to the voters of the City of Eugene a proposed charter amendment authorizing the issuance and sale of the bonds. The amendment shall provide that the bonds on their face state that they shall not in any manner be a general obligation of the Eugene Water & Electric Board or of the City of Eugene, nor a charge upon the tax revenue of such city nor of any revenues or property of such city or revenues or property of the Eugene Water & Electric Board not specifically pledged thereto; however, the general revenues of the electric utility system of the Eugene Water & Electric Board may be pledged for the amount of such bonds."

Plaintiff argues that the provisions of the plan which relate to financing of and assistance for customer energy conservation measures violate the Oregon constitutional requirements (1) that public bodies not loan credit to or raise money for private entities (Art. XI, § 9); (2) that no law be passed which confers privileges or immunities on persons or classes unequally (Art. I, § 20); (3) that no private property or services be taken without just compensation or for non-public purposes (Art. I, § 18); and (4) that no law impair the obligation of contracts (Art. I, § 21).

Or. Const., Art. XI, § 9 provides, as relevant:

"No * * * city * * * or other municipal corporation * * * shall * * * raise money for, or loan its credit to, or in aid of, any * * * company, corporation or association."

In *Carruthers v. Port of Astoria,* 249 Or 329, 438 P2d 725 (1968), the Supreme Court concluded that public commitments or expenditures which incidentally benefit private entities do not violate Art. XI, § 9, unless they entail ultimate recourse against general tax revenues or do not serve a "public purpose." The parties' statement of controversy states that EWEB's commitments under the plan will be redeemed out of operating revenues of the utility or from bonds which must show on their face that they do not create a general obligation of EWEB or the city.

Plaintiff argues, however, that the plan's contemplated expenditures to or in aid of eligible residential customers are not for a public purpose. Plaintiff states:

"Defendant relies upon the attenuated theory that Congress has declared the existence of an energy crisis which threatens the very vitals of the nation, and by reason of the existence of such an impending calamity, stern measures engendering conservation will benefit the public. This argument must be tried and found wanting * * *."

We disagree. Strongly as plaintiff may disagree with the congressional policy and the objectives of the EWEB plan, they constitute a public purpose under the following test articulated in *Carruthers v. Port of Astoria, supra:*

" 'The only valid criterion would seem to be whether the expenditures are sufficiently beneficial to the community as a whole to justify governmental involvement; but such a judgment is more appropriate for legislative than judicial action. The judiciary should invalidate expenditures only where reasonable men could not differ as to their lack of social utility.' Note, 66 Harv L Rev 898 at 903 (1953)." 249 Or at 341.

We conclude that the plan does not violate Art. XI, § 9.[1]

---

[1] EWEB also *appears* to argue that the plan does not violate the constitutional provision because its beneficiaries will be private persons rather than companies, corporations or associations. *See Miles v. City of Eugene,* 252 Or 528, 451 P2d 59 (1969). The definition of "eligible customer" in the plan includes a "person who owns or occupies a residential building * * *." It is not clear whether benefits would be available to incorporated owners of residential properties.

■　Plaintiff next argues that the plan violates the equal privileges and immunities section of the state constitution (Art. I, § 20) in two ways: first, by discriminating against customers—like plaintiff—who took qualifying energy conservation measures prior to the plan's May 27, 1980, effective date and, second, by benefiting "some favored citizens (those who comply with energy-related compulsion) over others * * *."

The standard for determining whether the plan violates Art. I, § 20 by making assistance available only to eligible customers who first take conservation measures after May 27, 1980, is whether there is a rational basis which is related to the plan's purposes for according benefits to such customers while denying benefits to customers who took similar measures at an earlier time and are thereby not eligible for financial assistance. *See, e.g., School District No. 12 v. Wasco County,* 270 Or 622, 529 P2d 386 (1974); and *Mallatt v. Luihn et al,* 206 Or 678, 294 P2d 871 (1956); *cf. Olsen v. State ex rel Johnson,* 276 Or 9, 554 P2d 139 (1976). We conclude that there is a rational basis for the different treatment. The aim of the plan is to induce energy conservation and reduce future demands on the energy production and distribution system. The plan provides financial assistance to consumers in order that conservation measures can be put into effect for the immediate benefit of the individual consumer and the ultimate benefit to the energy distribution system. In light of these purposes of the plan, it is rational to provide benefits only to consumers who have not yet taken conservation measures and who may be induced to do so by the availability of financial assistance. Moreover, we agree with the suggestion in EWEB's brief that plaintiff's argument would render unconstitutional virtually all governmental action which does not confer benefits retroactively. We therefore reject the argument that the plan discriminates unconstitutionally by not providing assistance to customers who took energy conservation measures prior to the plan's effective date.

We also reject plaintiff's second privileges and immunities clause argument. The Supreme Court stated in *Jarvill v. City of Eugene,* 289 Or 157, 613 P2d 1 (1980), that

"* * * Article I, section 20, however, prohibits only the grant of a privilege which does not belong to all citizens

*'upon the same terms.'* * *" (Emphasis in original.) 289 Or at 184-85.

Plaintiff's argument that the plan favors those who choose to take energy conservation measures and thereby receive benefits over those who resist "energy-related compulsion" says no more than that the "disfavored" ones have not chosen to place themselves upon the same terms as the favored group.

■ Plaintiff's next contention is that the plan violates Art. I, § 18 of the Oregon Constitution, prohibiting the taking of private property or services without just compensation, because the plan

"* * * proposes to take ratepayer funds from all citizens of the service area, and to redistribute those monies to a select few in the guise of grants, loans, interest write-offs, and the like. Since money constitutes property and stored-up services (labor) in the form of trade goods, a taking will occur from those who must subsidize customers who apply weather conservation materials to their homes and businesses."

We hold that nothing in the plan's financing or assistance scheme constitutes a "taking," any more than any other factor which affects utility rates or operations is a "taking" of the property or services of the ratepayers.

■ Plaintiff's remaining constitutional argument is that the plan violates Or. Const., Art. I, § 21, which prohibits any law which impairs contractual obligations, in that:

"* * * Plaintiff and nonparticipants in the residential conservation plan generally, have entered into contractual relations with EWEB, which contractual relations EWEB now intends to change. Specifically, EWEB has agreed to provide plaintiffs and other customers with electric services and plaintiffs and other customers have agreed to pay for those services. EWEB proposes to change these contractual relationships effective on the date the EWEB plan was approved. EWEB, by the legislative dictate of its Board of Commissioners, will now provide plaintiffs and its customers with conservation services and loans and grants for conservation measures and equipment. EWEB has unilaterally changed the contract with plaintiffs and EWEB's other customers, without their agreement."

Nothing in the record before us indicates that any express or implied contract between EWEB and its customers precludes the implementation of the plan. *Cf.* ORS 225.250 (discussed *infra*). If plaintiff's theory is that, as a matter of law, a publically-operated utility necessarily impairs its contract with customers by expanding or adding to existing operations in ways which do not affect the delivery of existing services, we disagree.

■     Plaintiff's final argument is that EWEB has no charter or statutory authority to put an energy conservation plan into effect. We conclude that EWEB has statutory authority and authority under the Eugene City Charter to implement the plan.

ORS 225.250 provides:

"The earnings of the electric plant or distributing system shall be applied and used in payment of warrants and interest thereon issued in connection with operation of any such plant or system, and also in payment for *alterations, improvements, additions or extensions* and for redemption and retirement of outstanding bonds, together with interest thereon, and shall be expended only in connection with and for improving such plant or system and not for other municipal purposes, except as otherwise provided in ORS 225.270." (Emphasis added.)

Section 44(1) of the city charter, which both parties quote in their briefs,[2] provides:

"The power of the city to *generate, collect, and distribute electricity,* steam, and other kinds of physical energy is hereby vested in the Eugene Water & Electric Board." (Emphasis added.)

We construe the language "alterations, improvements, additions or extensions" in the statute to encompass and authorize energy-related programs of the kind in question. We interpret the words "generate, collect and distribute electricity" in the charter provision as including conservation of electricity. Plaintiff argues that neither the statute nor the charter authorize EWEB to finance *reductions* in power use. We disagree. In our view, current usage

---

[2] We take judicial notice of the charter. ORS 221.710. The better practice for parties relying on city charter provisions is to introduce the charter into evidence. However, because the parties' briefs are in substantial agreement about what section 44(1) provides, we are able to consider the section.

levels are related to EWEB's future generation, collection and distribution of electricty.[3]

We conclude that EWEB had authority to adopt and implement the plan and that the plan is not constitutionally offensive in any of the respects plaintiff claims.

Affirmed.

---

[3] In *Porter v. Tiffany,* 11 Or App 542, 502 P2d 1385 (1972), *rev den* (1973), we held that, under ORS 225.250 and applicable city provisions then in effect, EWEB did not have authority to expend funds in support of or opposition to ballot measures relating to nuclear power development. Our opinion here is not inconsistent. We stated in *Tiffany* that the relevant language

"* * * refers to the physical management of the utilities. The function of raising money through bond issues to finance proposed extensions is an entirely different power which has been specifically given to the common council of the city of Eugene. * * *" 11 Or App at 549.

As we construe the language of ORS 225.250 and currently applicable charter provisions, EWEB's activities under the plan are within the ambit of "physical management of the utilities." Although the plan does envision a possible bond issue in connection with its financing scheme, such bonding is made contingent upon a charter amendment authorizing the sale of the bonds. Assuming *arguendo* that *current* charter provisions would not authorize EWEB to issue bonds of the contemplated kind, no bonds can be issued under the plan unless the charter is amended to authorize their issuance.