Argued and submitted April 1, 1987, resubmitted In Banc June 1, affirmed
November 9, 1988, reconsideration denied April 4, petition for review pending 1989

# CITY OF PORTLAND,
*Respondent,*

*v.*

# AYERS,
*Appellant.*

## (304441-8508; CA A40979)

764 P2d 556

732

Henry Kane, Beaverton, argued the cause and filed the briefs for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

DEITS, J.

Richardson, J., concurring.

Newman, J., dissenting.

## DEITS, J.

Defendant appeals his conviction for violating section 14.24.160 of the Portland City Code by operating a "sound reproducing device on a public right-of-way so as to be plainly audible fifty feet or more from the device." He assigns error to the overruling of his demurrer to the complaint, through which he asserted that the code provision violates the speech provisions of the state and federal constitutions, Article I, section 20, of the Oregon Constitution and the Equal Protection Clause of the Fourteenth Amendment. We affirm.

Defendant's conviction resulted from his use of a portable loudspeaker to amplify anti-abortion statements which he addressed to persons entering the Lovejoy Surgicenter. Section 14.24.160, under which defendant was charged, proscribes the operation of

"any device designed for sound production or reproduction, including, but not limited to, any radio, television set, musical instrument, phonograph, loud speaker, bell or chime, in such a manner as to cause a noise disturbance * * * or to operate or permit the operation of any such device between the hours of 10:00 p.m. and 7:00 a.m. so as to be plainly audible within any dwelling unit which is not the source of the sound; *or to operate any such device* on public property or *on a public right-of-way so as to be plainly audible 50 feet or more from such device* provided that a person operating any such device in a City park pursuant to a permit granted by the Commissioner In Charge of the Park Bureau shall be in violation only if the device is plainly audible at any point along the park boundary. Violation of this Section shall be punishable by a fine of up to $500." (Emphasis supplied.)

At the time that defendant was charged, section 18.12.020 of the code contained provisions materially similar to those of section 14.24.160. However, chapter 18.14 of the code contained certain exemptions to the requirements of section 18.12.020 and allowed persons to apply for variances. Subsection (3)(b) of section 18.12.020 established permit procedures. Section 14.24.160 did not include similar permit, exemption or variance procedures. Defendant argues that that disparity violates the equal privileges and immunities provision of the state constitution and the Equal Protection Clause of the federal constitution, because

"a person desiring to be excused from complying with Section

18.12.020(3)(b) can obtain a permit, exemption or variance, permitting him to do what is forbidden by Section 14.24.160.

"The result is that one person using a loudspeaker can be arrested and convicted for violating Section 14.24.160, while another person with a Section 18.12.020(3)(b) permit, exemption or variance is not arrested and convicted."

■ Defendant does not contend that he applied for a permit, variance or exemption. Consequently, the reason why the Title 18 exception procedures could not apply to him is that he did not attempt to use them. Having voluntarily placed himself in the "disfavored" category, defendant cannot complain on equal protection or equal privileges and immunities grounds. *See, e.g., Nicoll v. City of Eugene,* 52 Or App 379, 384-85, 628 P2d 1213, *modified on unrelated grounds,* 53 Or App 528, 632 P2d 502 (1981). However, the more fundamental defect in his argument is its mistaken premise that the city has classified different persons as being subject to section 14.24.160 *or* to the provisions of Title 18. Both apply to all persons within the city's jurisdiction. Therefore, there is no classification upon which defendant can base his argument that the ordinances are *facially* discriminatory. Defendant does not argue that they have been *applied* in an unconstitutionally disparate manner or that the city has made an impermissible election to charge him under one ordinance rather than the other. *See State of Oregon v. Pirkey,* 203 Or 697, 281 P2d 698 (1955); *State v. Hodgdon,* 31 Or App 791, 571 P2d 557 (1977), *rev den* 282 Or 537 (1978); *see also State v. Freeland,* 295 Or 367, 667 P2d 509 (1983). His Article I, section 20, and Fourteenth Amendment arguments are without merit.

■ Defendant next argues that section 14.24.160 regulates communicative activities in ways that are impermissible under Article I, section 8, of the Oregon Constitution and the First Amendment. We turn first to the Oregon constitutional issue. The parties devote much attention to *City of Portland v. Aziz,* 47 Or App 937, 615 P2d 1109 (1980), where we sustained a provision of section 14.24.160, other than the one in issue here, against various First Amendment challenges advanced by the defendant. However, *Aziz* did not concern Article I, section 8. We said there that the "defendant relies on the First Amendment to the United States Constitution. He does not rely on Article I, section 8 of the Oregon Constitution." 47 Or App at 943 n 7.

Defendant's arguments on the constitutional free speech provisions appear to be that the city's ordinance "prohibits" speech. However, the ordinance obviously does not prohibit speech. Assuming that defendant means that section 14.24.160 regulates speech rather than prohibiting it, his argument still does not succeed. The ordinance does not regulate speech or the content of speech; the regulatory objective is amplified noise, an effect of speech, which Article I, section 8, permits the city to regulate. *State v. Robertson,* 293 Or 402, 412, 416-17, 649 P2d 569 (1982); *see also State v. Ray,* 302 Or 595, 733 P2d 28 (1987); *State v. Moyle,* 299 Or 691, 705 P2d 740 (1985); *State v. Harrington,* 67 Or App 608, 680 P2d 666, *rev den* 297 Or 547 (1984).

In *City of Portland v. Tidyman,* 306 Or 174, 759 P2d 242 (1988), the Supreme Court reiterated that regulations which are directed at effects of speech, and which do not treat different speech differently on the basis of content, enjoy a wide margin of constitutional permissibility. The court said that, unlike the "adult business" ordinance before it in *Tidyman,* which was "flatly directed against one disfavored type of pictorial or verbal communication," 306 Or at 184,

"[a] regulation is not always unconstitutional because it restricts one's choice of a place or time for self-expression or religious practice, when that is not the object of the regulation. The concern may be with the medium, not the message, as when park regulations ban fireworks even for a Fourth of July celebration. To decline an exception from a land-use regulation for a theater, a printing plant or a church differs from attempting to restrict prayer meetings, film showings or desk-top publishing in a residence, or in turn from enforcing safety codes or parking restrictions when a residence is so used. Similarly it can make a difference whether a city imposes a permissible limitation on all location, time, manner, intensity, or invasive effect of some communicative activity (for instance, zones out all bookstores along with other commercial shops, or restricts all use of soundtrucks in residential areas to specified hours) or whether it concludes that limitations on number, frequency, density, or duration suffice to serve the city's regulatory objective. This court has never held that an otherwise valid restriction must cover all or nothing, for instance that a city may not make evenhanded exceptions to an otherwise valid restriction against placing signs on

utility poles, obstructing traffic for a civil rights commemoration, or using soundtrucks during a political campaign without having to make the same equally available to supporters of sports teams or to commercial advertisers. But that does not help the city here. This ordinance does not allocate priorities in intermittent and temporary exceptions or in use of scarce opportunities created by the city itself * * *." 306 Or at 182. (Footnotes omitted.)

The ordinance challenged in this case regulates an "invasive effect" of *all* communicative (and noncommunicative) activity and regulates that effect in the same way regardless of the nature or content of the communication or other activity that produces it.

■   The dissent apparently agrees that section 14.24.160 regulates an effect of speech rather than speech itself. Nevertheless, the dissent would hold that the ordinance is overbroad and, therefore, violates Article I, section 8. The problem with the dissent's position is that defendant makes no Article I, section 8, overbreadth argument in this appeal. The dissent attempts to find such an argument in defendant's presentations to the trial court and in his briefs and oral argument here. It is correct, as the dissent points out, that the overbreadth issue was raised in the trial court proceedings. However, that is irrelevant. The arguments that defendant makes to us define the scope of our inquiry. Indeed, given defendant's clear and profuse reliance on the overbreadth issue in the trial court, the absence of argument on that issue in his appellate presentation indicates that he has chosen to rely on other issues instead and has abandoned the overbreadth issue that he raised below.

The dissent identifies one statement in defendant's opening brief that it regards as the nucleus of an overbreadth argument, *i.e.*, "a regulation impinging on permissible free speech must be narrowly drawn to serve a compelling governmental interest."[1] We agree that that statement is the closest that defendant comes to raising an Article I, section 8, overbreadth issue in this appeal, but we do not agree that he has come close enough. In the first place, the statement is derived from First Amendment jurisprudence. The "compelling state

---

[1] Variations of that statement recur in defendant's briefs.

interest" test to which it refers is a federal concept, which the Oregon Supreme Court, in *State v. Robertson, supra,* and later cases, appears to have said is inapplicable to Article I, section 8. More fundamentally, defendant's bare statement is not an argument at all. It is a truism, which he does not tie to the ordinance that he challenges, does not flesh out with authority or analysis and does not develop into an argument. Despite the dissent's assiduous efforts to stretch and convert defendant's statement into an overbreadth contention, nothing in his briefs can reasonably be read as including—or intending to include—that issue among his Article I, section 8, complaints.

The dissent also asserts that defendant raised the overbreadth issue in his oral argument before this court. However, in the absence of anything to raise the issue in defendant's opening appellate brief, the references to overbreadth that the dissent ascribes to his attorney's oral argument would not suffice to preserve the issue, even if the dissent were correct in its understanding that counsel's oral remarks were aimed at that issue. We note, however, that we do not agree with that understanding. The full context of the portion of the argument from which the dissent quotes appears to be aimed at the same point which defendant's briefs make—that the ordinance proscribed his speech.

The dissent also appears to take the view that it is not incumbent on defendant to raise the overbreadth issue specifically, if he has made the general contention that the ordinance violates Article I, section 8. However, under *State v. Robertson, supra,* and its progeny, overbreadth is a very distinct inquiry in the Article I, section 8, analytical scheme. Overbreadth cannot become a consideration unless, contrary to defendant's argument, the legislation directly regulates something which *can* permissibly be regulated, *i.e.,* an effect of speech rather than speech or its content. Stated another way, legislation cannot intrude upon protected activity through its overbreadth if it has the more immediate defect of regulating an activity that cannot constitutionally be regulated at all. Defendant could, of course, have supplemented his argument that the ordinance "prohibits" speech with an alternative overbreadth contention. However, he did not. We cannot agree that a party's raising of an issue under Article I, section 8, implicitly raises all other potential issues which can arise under that provision.

A number of recent decisions by the Supreme Court and this court deal generally with the raising and preservation of constitutional issues. We note initially that the situation here differs from the one presented in most of those cases. The overriding problem they address is whether and when state law issues should be reached, and federal constitutional questions should be avoided, if the appellant has not raised or adequately raised state law issues. Here, defendant *has* raised identifiable issues of state law, including the issue of impermissible regulation of speech under Article I, section 8. The question is not whether we should reach *any* state law questions, but whether we should go beyond defendant's arguments and consider state law issues *in addition* to the ones that he elects to raise.

In *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983), the court rejected the state's argument that it should not reach a state constitutional issue "because it was not adequately argued" in the trial court. 295 Or at 265. The principal reason for that conclusion was the court's concern that state law issues be decided before reaching federal constitutional questions. The court noted that, unlike the parties' presentations in the trial court, they and an *amicus* had provided "extensive briefs" on the state constitutional question to assist the court on review. 295 Or at 268.

Notwithstanding the court's statements in *Kennedy* about its ability to reach state constitutional questions that were not *adequately* presented below, it made it clear that it adhered to traditional preservation and presentation requirements in connection with state questions that were not raised at all on appeal. It said:

> "On many occasions, this court has decided cases in which a defendant not only failed to brief but wholly failed to raise anything but a federal claim. In recent cases we have taken care to point this out, so that our decision is not misunderstood to foreclose any potential issue of state law for the future. *See, e.g., State v. Farber,* 295 Or 199, 666 P2d 821, n. 10 (1983); *State v. Roberti,* 293 Or 59, 644 P2d 1104, *rev'd on other grounds* 293 Or 236, 646 P2d 1341 (1982); *State v. McMurphy,* 291 Or 782, 786, 635 P2d 372 (1981); *State v. Brown,* 291 Or 642, 634 P2d 212 (1981)." 295 Or at 268.

Similarly, we said in *State v. Cochran,* 72 Or App 499, 696 P2d 1114 (1985):

"Although we are mindful of the rule that 'all questions of state law be considered and disposed of before reaching a claim that this state's law falls short of a standard imposed by the federal constitution on all states,' [citing *State v. Kennedy, supra,*] we decide the case under the federal constitution, because defendant seems only to have made federal claims." 72 Or App at 511.

In *State v. Henry,* 78 Or App 392, 717 P2d 189 (1986), the plurality of this court held that ORS 167.087, which criminalized the dissemination of obscene material, violated Article I, section 8, because it was vague. We noted that the "focus of defendant's argument on appeal is that ORS 167.087 violates Article I, section 8, under the analysis developed by the Supreme Court in *State v. Robertson, supra.*" However, after observing that the defendant had also raised vagueness in his demurrer to the indictment and in his arguments to us, we concluded that the "vagueness issue has been adequately raised below and on appeal." 78 Or App at 396 n 6. *See also* the dissenting opinion of Van Hoomissen, J., 78 Or App at 407 n 2.

On review in *Henry,* 302 Or 510, 732 P2d 9 (1987), the Supreme Court did not agree that the vagueness issue had been raised, and it commented:

"The Court of Appeals reversed the convictions, holding that ORS 167.087 is unconstitutionally vague. Defendant had not made an argument based on vagueness apart from his claim under Article I, section 8, but we understand the Court of Appeals to have seen the two issues as related. Although we proceed to decide the constitutional issue as presented, we should say a word about the vagueness issue." 302 Or at 513.

After a paragraph of *dictum* about vagueness, the court went on to hold the statute unconstitutional on the ground raised by the defendant: that it censored and regulated the content of speech. Although the Supreme Court said so less directly than we did, both courts' opinions in *Henry* indicated that only the specific Article I, section 8, issues which they understood to be raised by the parties should be the bases for decision. *See also State v. Robertson, supra,* 293 Or at 407.

The case we find that lends the strongest support to the contrary understanding is *State v. Blocker,* 291 Or 255, 630 P2d 824 (1981), where the defendant challenged his conviction for possessing a "billy," in violation of ORS 166.510(1),

on the ground that the statute was overbroad. The court concluded that the challenge was sufficient to raise the question, which it had recently decided in *State v. Kessler*, 289 Or 359, 614 P2d 94 (1980), whether the statutory proscription abridged the right to bear arms under Article I, section 27, of the state constitution. The court explained:

> "Thus defendant's attack on ORS 166.510 as 'overbroad' impliedly asserted that it reached beyond permissible limits to impinge on a constitutionally protected right. This could only be the right to bear arms, although its source was not identified, as it should have been. The question is whether we should reject the attack for failure to cite its source. The fact is that we decided *State v. Kessler, supra,* after the present case had been tried and appealed. The case was held by the Court of Appeals for our disposition of *Kessler.* That court then decided it upon a correct interpretation of our decision in *Kessler.* The state's petition for review asked us to consider whether the Court of Appeals had misapplied our interpretation of § 27.
>
> "In these circumstances, we conclude that it is proper for us to consider defendant's 'overbreadth' attack to mean that the statute swept so broadly as to infringe rights that it could not reach, which in this setting means the right to possess arms guaranteed by § 27." 291 Or at 261.

The situation in *Blocker* was the converse of the one here. It may be correct that an overbreadth contention can "impliedly" refer to the substantive right that the putatively overbroad legislation invades. However, legislation that regulates a subject that cannot constitutionally be regulated at all is, by definition, not overbroad, and an argument such as defendant's, that the regulation is impermissible *per se,* does not implicitly carry with it any overbreadth contention. Perhaps the greatest relevance of *Blocker* is that it demonstrates that preservation is the general rule by the very lengths to which it goes to fashion an exception, and by its express limitation of the exception to the circumstances of that case.

We do not intend to imply that the preservation rule is absolute. The cases that we have discussed emphasize that courts must have the ability to depart from the parties' arguments on occasion, in the interest of such jurisprudential objectives as avoiding constitutional issues and deciding state law questions before federal ones. However, we do not agree

with the view of the dissent that there is an absolute rule of non-preservation in cases involving speech or other constitutional issues, nor do we agree that this is an appropriate occasion to decide the issue not raised. He *has* made arguments about the state constitutional speech provision. However, those arguments do not include anything which comes close to the overbreadth issue. We also conclude that this is not an occasion, of the kind described in *State v. Kennedy, supra,* 295 Or at 268, to ask for additional briefing or argument on a state constitutional provision which a party cites as a seeming "afterthought" or raises but leaves unargued or unexplained. Defendant has presented an identifiable issue under Article I, section 8. The fact that that issue is not the one which the dissent regards as decisively favorable to him is no reason for the court rather than defendant to select or articulate his arguments. We hold that section 14.24.160 does not violate Article I, section 8, in any way that defendant urges.[2]

We also hold that it does not violate the First Amendment. *Kovacs v. Cooper,* 336 US 77, 69 S Ct 448, 93 L Ed 513 (1949); *see also California v. LaRue,* 409 US 109, 117, n 4, 93 S Ct 390, 34 L Ed 2d 342 (1972); *Red Lion Broadcasting Co. v. FCC,* 395 US 367, 386-87, 89 S Ct 1744, 23 L Ed 2d 371 (1969).

Affirmed.

**RICHARDSON, J.,** concurring.

I concur in the main with the lead opinion's analysis and disposition. I do not think defendant has presented the overbreadth issue and, under the circumstances of this case, the issue should not be addressed. I emphasize, however, that appellate courts enjoy flexibility in determining whether to reach or decline to reach Oregon constitutional questions which have not been presented or properly presented. The cases discussed by the lead opinion and the dissent make it clear that there is no immutable rule of preservation or non-preservation. I also write separately to note that, if we could or should reach the issue, I do not agree with the dissent's conclusion that the city's legislation is overbroad. The dissent juxtaposes section 14.24.160 of the code, which does not provide for "variances" or other exceptions, against sections

---

[2] Given the ground for our decision, we do not comment on the merits of the Article I, section 8, overbreadth issue.

18.12.010 *et seq,* which contain essentially the same regulations of amplified sound but provide for exemptions and variances. Defendant did not apply for a variance under section 18.14.020. The dissent regards that fact as irrelevant, because defendant was prosecuted under section 14.24.160 rather than under Title 18.

In my view, exactly the opposite conclusion follows. The proper approach is to read the provisions *in pari materia.* When they are so read, any overbreadth in section 14.24.160 is cured by the variance and exemption procedures that Title 18 establishes. Given the fact that their substantive regulations are materially identical, it is untenable to assume, as the dissent appears to do, that a person who seeks and obtains a variance under·section 18.14.020 would or could be prosecuted under section 14.24.160.

The dissent's basis for concluding that the city's 50-foot limit is unconstitutional is that it is a "flat prohibition" which "takes no account of the time and place of the speech on the public right-of-way, the anticipated size and proximity of the audience, or other pertinent circumstances." 93 Or App at 749. The dissent hypothesizes presidential candidates, and presumably others, who might require amplification to reach an audience that extends beyond the 50-foot range. However, I reiterate that the exemptions and variances available under Title 18 are sufficient to meet such situations.

The dissent's use of the term "flat prohibition" is deceptive. The 50-foot radius is a place and manner limitation, not a prohibition, and there is no reason why the city should not be able to impose it as a general rule. *See Kovacs v. Cooper,* 336 US 77, 69 S Ct 448, 93 L Ed 513 (1949).[1]

The dissent's overbreadth analysis is substantially eroded by *City of Portland v. Tidyman,* 306 Or 174, 759 P2d 242 (1988). As the passage from that opinion quoted by the majority demonstrates, the city has broad constitutional latitude in fashioning a content-neutral regulation of the time,

---

[1] The dissent's invocation of the "public forum" doctrine, and its emphasis on the purported constitutional significance of where defendant was engaging in his noise-producing activity, are misplaced. The regulatory objective of the ordinance is where the noise goes, not where it originates. Nothing in the public forum doctrine supports the dissent's view that noise that creates a disturbance on private property is impervious to regulation on the basis that it is generated on an adjacent public sidewalk.

place and manner of expression. The dissent faults the city's 50-foot rule for not accommodating all variations of time, place and audience size that might arise. *Tidyman* suggests that it is a permissible legislative choice to design time, place and manner regulations for the very purpose of preventing the types of variations that the dissent believes that the city must allow. In any event, the dissent does not explain why the reach of the 50-foot rule is overbroad, except to say that some persons may want to project their voices or other sounds over greater distances.

Even without the exemption and variance provisions of Title 18, it would seem a large leap to say that a time, place and manner regulation is unreasonable—or, by analytical parity, overbroad—simply because the legislative body could have chosen different regulations.

It is not correct that the city's regulation does not "take account" of the time and place of amplified speech. The regulation simply creates no exception, based on time, for speech which occurs in certain places and is conducted in a certain manner. The dissent does not persuade me that that is not a valid legislative decision. I do not understand the discussion of "administrative proceedings" in *Tidyman* to have any bearing on regulations of the kind in question, which are not predicated on the supposed effects of communication with a particular content, but which apply to amplified sound of all kinds.

Warren and Deits, JJ., join in this concurring opinion.

**NEWMAN, J.,** dissenting.

The majority holds that defendant did not preserve the issue of overbreadth under Article I, section 8. The majority is wrong. Defendant preserved the issue. We can and should consider it and hold the ordinance to be overbroad under Article I, section 8.

The majority concedes that in the trial court, defendant raised and argued the overbreadth issue under Article I,

section 8.[1] Moreover, the trial court specifically considered the issue of overbreadth when it ruled on the demurrer.[2]

In his appellate brief, defendant cites and relies on Article I, section 8, and argues that the ordinance violated it. He also argues that "a regulation impinging on permissible free speech must be narrowly drawn to serve a compelling governmental interest." The majority says that this is only a First Amendment argument and cannot "reasonably be read as including—or intending to include—that issue among his Article I, section 8, complaints." 93 Or App at 737.[3] Defendant, however, did not limit his argument to the First Amendment or cite any First Amendment authority for it. The majority also argues that it is a "truism," and that defendant "does not flesh [it] out with authority and analysis and does not develop [it] into an argument." 93 Or App at 737. Defendant's proposition, however, belies the majority's position that "nothing in [defendant's] briefs can reasonably be read as including—or intending to include—that issue among his Article I, section 8, complaints." 93 Or App at 737. Defendant's assertion that the regulation is not "narrowly drawn"

---

[1] In support of his demurrer, he asserted that section 14.24.160 "is an unconstitutional infringement of defendant's right of free speech under Article I, section 8" and that "[t]he ordinance at bar violates the 'overbreadth' rule as stated [in] *State v. Robertson,* [293 Or 402, 410, 649 P2d 569 (1982)]."

[2] The court stated:

"It happened to be my case on appeal. It is [*City of Portland v.*] *Aziz* [47 Or App 937, 615 P2d 1109 (1980)]. It already answers all of the questions. It discussed this particular ordinance, 14.24.160, and indicates that it's perfectly constitutional. It's not vague, it's not overbroad and it answers all of the questions that you raised. It's already been tried and already been heard and already been decided on appeal. Exactly on point.

"* * * * *

"* * * [T]he question is whether or not the city ordinance is vague or overbroad, prohibiting this type of conduct. It's already been answered by the Court of Appeals."

In support of his second demurrer, defendant again presented his argument that the ordinance was overbroad under Article I, section 8. The court stated:

"With respect to the constitutionality, I think the *Aziz* case went straight forward and talked about this particular statute. It states that states may place reasonable time, manner and place limitations on the exercise of First Amendment rights and went on to state that the statute was not vague nor overbroad with respect to it. And the court did not feel that there was an infringement of the freedom of speech, a constitutional issue, and therefore I will overrule the demurrer."

[3] The majority also asserts that defendant's arguments "do not include anything which comes close to the overbreadth issue." 93 Or App at 741.

can reasonably be read as including, and intending to include, the issue of overbreadth among his Article I, section 8, complaints.

In the oral argument before us, both counsel acknowledged that the actual issue was overbreadth. Defendant's counsel urged that "[o]f course the *Aziz* decision [*City of Portland v. Aziz,* 47 Or App 937, 615 P2d 1109 (1980)] of this court deals with issues that were raised in the court below, vague, overbroad, and so forth." He concluded his argument and stated he could answer questions if the court wished. An exchange then occurred that shows that the court and counsel were dealing with overbreadth:

| "Joseph, C. J.: | I think we're dealing with something pretty broad prohibition [sic] here, aren't we. |
|---|---|
| "Asst. Atty. Gen.: | I think we are. But I think the court has identified what the issue is and I don't have to add a great deal to my brief, even if I could. I think his is— |
| "Newman, J.: | What's the issue? |
| "Asst. Atty. Gen.: | I find the issue to be to the extent that this does infringe upon speech, is the question, although it is not purposefully or primarily directed at speech, it does have an incidental effect upon speech if it indeed applies to such activity as it was applied to in this case. And I think it does." |

The majority shifts its argument, asserting that, "given defendant's clear and profuse reliance on the overbreadth issue in the trial court, the absence of argument on that issue in his appellate presentation indicates that he has chosen to rely on other issues instead and has abandoned the overbreadth issue that he raised below." 93 Or App at 736. The overbreadth issue was not "absent." Neither counsel considered it "absent" or that defendant had abandoned or overlooked it, and neither counsel was surprised.

In sum, in the trial court, defendant raised the issue of overbreadth under Article I, section 8, as well as under the First Amendment; that court considered both issues and decided them, although adversely to defendant. Defendant

specifically relied on and cited Article I, section 8, and the First Amendment in his brief in this court and, without referring either to federal or state constitutional authority, argued that the ordinance must be narrowly drawn. In oral argument, court and counsel identified overbreadth as a central issue. The issues of overbreadth under Article I, section 8, and the First Amendment, therefore, were raised and preserved.

Contrary to the majority's suggestion, the cases support the position that when there is a basis for the court to find that a state constitutional issue of importance is preserved, it can and will consider it, particularly when the issue involves expressive rights and when a federal constitutional issue also is raised. In *State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983), the attorney general contended that the Supreme Court should not consider the state constitutional issue at all, "because it was not adequately argued below," although defendant cited Article I, section 12, below.[4] 295 Or at 265. He argued, however, "that it was not urged as a basis 'distinct' or 'separate' from the federal double jeopardy provision, because defendant cited in support of his claim only cases that were themselves decided on federal grounds." 295 Or at 265. Nonetheless, the Supreme Court, for the reasons it set out in a seven page discussion, stated that "we decline the state's invitation to hold [that] the defendant's claim under that section was not raised or preserved." 295 Or at 268. Here, of course, defendant argued the overbreadth issue below under Article I, section 8, as a distinct and separate issue. *See Cooper v. Eugene Sch. Dist. No. 4J,* 301 Or 358, 723 P2d 298 (1986).[5]

---

[4] *State v. Kennedy, supra,* emphasizes the importance of, and reasons for, deciding all questions of state law before reaching the claim that a federal constitutional standard is not met. 295 Or at 262. The court stated that when a source in Oregon law "has been cited but not briefed or argued, we have asked for additional memoranda and further argument." 295 Or at 268. Here, of course, in addition to raising the First Amendment argument, defendant has briefed and cited his source, Article I, section 8.

[5] In *Cooper v. Eugene Sch. Dist. No. 4J, supra,* 301 Or at 369 n 12, the court stated:

"In determining whether to reach a federal constitutional claim without first disposing of all issues of state law, including the state's constitution, one must distinguish three questions: (1) whether an *issue* has been raised at all; (2) whether any state source has been *cited* in connection with the issue; (3) whether an *argument* has been made in support of the state claim.

"An issue that is not raised at all, even on a generous reading, presents nothing to be decided (although an appellate opinion may note that the issue was

In *State v. Henry,* 78 Or App 392, 717 P2d 189 (1986), the defendant, without specifying a constitutional source, demurred to the indictment on the ground that ORS 167.087 was "vague" and "overbroad." On appeal, he urged that the statute violated Article I, section 8, under the analysis in *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982). His brief did not refer to "vagueness." His argument made only the most general reference to vague laws as constitutionally inadequate. Nonetheless, we held that vagueness under Article I, section 8, was adequately raised below and here. 78 Or App at 396 n 6. On review, the Oregon Supreme Court stated:

> "Defendant has not made an argument based on vagueness apart from his claim under Article I, section 8, but we understand the Court of Appeals opinion to have seen the two issues as related." 302 Or at 513.

The Supreme Court then proceeded to "say a word about the vagueness issue":

> "Though we do not disagree with the Court of Appeals, we hold that in any event ORS 167.087 contravenes Article I, section 8, of the Oregon Constitution and cannot be justified as an 'historical exception' from Oregon's constitutional guarantee of freedom of expression." 302 Or at 513.

---

not raised so as to make clear that the case is not a precedent on the question).

"If the issue has been raised in general terms, for instance, that a defendant claims a right to 'equal protection' or to counsel, or against self-incrimination or double jeopardy, the claim could refer to several statutory or constitutional rules. We have emphasized that parties should specify the statutory or constitutional sources of their claims, *see Sterling v. Cupp,* 290 Or 611, 613 n 1, 625 P2d 123 (1981)(citing cases), but also that a party cannot, by omitting a state-based claim, force an Oregon court to hold that this state 'has fallen below a nationwide constitutional standard, when in fact the state's law, when properly invoked, meets or exceeds that standard.' *State v. Kennedy,* 295 Or 260, 267, 666 P2d 1316 (1983). When only the disposition of a single case is involved, a court 'may request counsel either to explain the claim under the state law or to abandon it,' and 'if it is abandoned the court can note that fact so that the decision at least will not be a precedent on that issue.' *Id.* at 268.

"A court, however, is not confined to choosing only among the arguments and authorities cited by counsel for or against a properly identified claim. *See, e.g., State v. Bennett,* 301 Or 299, 721 P2d 1375 (1986)(Jones, J., concurring). Courts can avoid taking parties by surprise by inviting additional memoranda on inadequately briefed questions, as this court frequently does. That course should be followed whenever a litigant asks a court to invalidate a state statute or rule under the federal constitution without briefing its validity, or a possible valid interpretation, under applicable state law. *See, e.g., Planned Parenthood Assn. v. Dept. of Human Res., supra,* note 2."

In *State v. Blocker,* 291 Or 255, 630 P2d 824 (1981), the defendant failed to cite Article I, section 27, the source of its overbreadth argument. Nonetheless, the Supreme Court chose not to reject the defendant's overbreadth attack. Here, defendant raised Article I, section 8, the source of his overbreadth argument, both in the trial court and in the appellate court. Moreover, contrary to what the majority says, the overbreadth argument was not "absent" here.

We should conclude that defendant said enough here to raise and preserve the overbreadth issue under Article I, section 8, and that, contrary to the majority's view, 93 Or App at 741, it *is* "appropriate" that we consider that issue. It is important to defendant, to the city and to the public; and we should not shy away from considering it, because of an ungenerous view of the preservation of state constitutional issues.

I now turn to the merits. *City of Portland v. Aziz, supra,* is distinguishable. The section of the ordinance under which the defendant was prosecuted made unlawful the use or operation of a sound production device "between the hours of 10:00 p.m. and 7:00 a.m. so as to be plainly audible within any dwelling unit which is not the source of the sound." The court held that that portion of the ordinance was not vague or overbroad under the First Amendment and was a valid, reasonable regulation of the time and manner of the exercise of the defendant's First Amendment rights. The defendant did not raise, and the court did not consider, Article I, section 8. Moreover, the city did not prosecute the defendant under, and the defendant did not challenge or the court consider, the portion of the ordinance challenged here.

The majority agrees that the ordinance is directed against an effect of speech. 93 Or App at 735. The ordinance forbids operation of any device on a public right-of-way for production or reproduction of sound that is "plainly audible 50 feet or more from the device." To the extent that the amplified sound is speech, I conclude, as does the majority, that the ordinance is directed to the effect of speech as it is produced or reproduced by the device—that is, to the plain hearing of that speech more than 50 feet from the amplifying device. *See City of Portland v. Tidyman,* 306 Or 174, 759 P2d 242 (1988).

Accordingly, we must determine whether the challenged portion of the ordinance is overbroad. "When the proscribed means include speech or writing * * * even a law written to focus on a forbidden effect * * * must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid * * * 'overbreadth.'" *State v. Robertson, supra,* 293 Or at 417. The ordinance forbids speech at all times and locations if the device which amplifies it is located on a public right-of-way and if the speech is plainly audible more than 50 feet from the device. Amplification devices, however, ordinarily are indispensable if a speaker is to communicate effectively on a public street to a substantial audience. The ordinance serves to limit the size and proximity of the speaker's audience.

The public streets are "held in trust for the use of the public * * * for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *See Hague v. CIO,* 307 US 496, 515, 59 S Ct 954, 83 L Ed 1423 (1939). They are traditionally open to the public for communication to audiences, large and small. Certainly there are times when a speaker should be able to speak in the public street to an audience, a portion of which hears the speech plainly more than 50 feet from the amplifying device. If, for example, a presidential candidate were campaigning at noon in downtown Portland, he might address an audience large enough to extend more than 50 feet from the amplifying device that he uses. The ordinance, however, would make use of that necessary device unlawful and restrict the candidate's ability to communicate with the public.

Accordingly, the ordinance, with its flat prohibition beyond the 50-foot radius, is overbroad. It "reaches areas of constitutionally privileged expression and thus is invalid unless its coverage is narrowed to exclude these areas." *State v. Robertson, supra,* 293 Or at 435. It takes no account of the time and place of the speech on the public right-of-way, the anticipated size and proximity of the audience or other pertinent circumstances. Judicial interpretation cannot narrow the ordinance. *See State v. Robertson, supra.* 293 Or at 436. That is a legislative responsibility.

The concurrence argues that the ordinance "is a place and manner limitation, not a prohibition." 93 Or App at 742.

It is not a place and manner limitation; it is a prohibition. *See City of Portland v. Tidyman, supra,* 306 Or at 182-184; *compare Lloyd Corporation v. Whiffen,* 89 Or App 629, 750 P2d 1157, *rev allowed* 306 Or 155 (1988).

Although *former* section 18.12.020,[6] so far as pertinent here, is substantially identical to section 14.24.160, and section 18.14.020[7] contains a provision for a variance from the standards or provisions of Title 18, the Portland City Code contains no provision for a variance from section 14.24.160. It is immaterial to the applicability of Article I, section 8, that defendant did not apply for a variance, because the city did not prosecute him under *former* section 18.12.020; it chose to prosecute him only under section 14.24.160.

I dissent.

Van Hoomissen, Judge pro tempore, joins in this dissent.

---

[6] *Former* section 18.12.020(b) was amended in January, 1987, to change "50 feet" to "25 feet." Section 14.24.160 was not amended.

[7] Section 18.14.020 provides:

"Any person who owns, controls, or operates any sound source which does not comply with provisions or standards of this Title may apply for a variance from such standard(s) or provision(s)."

Section 18.14.020(b) provides that review of an application for a variance shall include consideration of at least the following characteristics:

"(1) The physical characteristics of the emitted sound,

"(2) The times and duration of the emitted sound,

"(3) The geography, zone, and population density of the affected area,

"(4) Whether the public health and safety is endangered,

"(5) Whether the sound source predates the receiver(s), and

"(6) Whether compliance with the standard(s) from which the variance is sought would produce hardship without equal or greater benefit to the public."

We need not decide whether that ordinance is constitutional.